UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
HERMAN GUERRERO,

                         Petitioner,

            -against-

                                            **MEMORANDUM & ORDER**

WILLIAM MAZZUCA, Superintendent,                  05-CV-465 (RJD)
    Fishkill Correctional Facility,

                        Respondent.
-----------------------------------------------------------------X
DEARIE, Chief Judge.

      Petitioner was indicted for rape in the first degree, robbery in the first degree, two counts of robbery in the second degree, assault in the second degree, and sexual abuse in the first degree. The charges arise out of petitioner's admitted participation, along with his drinking companion Dolores Grano, in an attack on Susan Lin in the Queens establishment where Lin tended bar.

      Petitioner entered a plea of guilty in the Supreme Court of Queens County to three of these counts—robbery in the first degree and two counts of robbery in the second degree. He seeks a writ of a habeas corpus pursuant to 28 U.S.C. §2254 on the ground that his plea to the *first*-degree robbery count was not knowing and voluntary because he did not allocute to use or threatened use of a dangerous instrument, one of that crime's essential elements. He concedes, however, that his allocution establishes the crime of robbery in the second degree.

      Relatedly, petitioner asserts that his attorney provided constitutionally ineffective assistance because he delivered but did not endorse petitioner's pro se motion to withdraw the plea.

      The Appellate Division unanimously rejected these intertwined claims on the merits and

affirmed the conviction, People v. Guerrero, 307 A.D. 2d 935 (2d Dep't 2003), and the Court of Appeals denied leave to appeal. People v. Guerrero, 1 N.Y.3d 572 (2003). The Appellate Division concluded that "[i]t is clear from the record that [petitioner's] plea of guilty was knowing and voluntary," and that "any alleged defects in the factual allocution do not constitute grounds for setting aside the plea since 'there is no suggestion that the plea of guilty was improvident or baseless.'" Guerrero, 307 A.D. 2d at 936 (internal citation omitted). The court found as well that the motion to withdraw the plea contained "conclusory assertions of innocence" and "was properly denied without a hearing." Id.

The state offered petitioner the choice of pleading either to the entire indictment in exchange for a sentence of eleven years, or to only the three robbery counts in exchange for a sentence twelve years. He elected the latter, with its longer sentence, because it spared him the sex-offender registration requirement that a rape or sexual assault conviction would carry. See New York State Sex Offender Registration Act ("SORA"), N.Y. Correction Law §§168 et seq. Affirming the conviction, the Appellate Division nevertheless noted its "disturb[ance] that [petitioner] was permitted to bargain away potential eligibility" for SORA registration, cautioning that SORA's "protections should not be bargained away merely to avoid the time and expense of a trial." Guerrero, 307 A.D.2d at 936.

The Appellate Division also rejected petitioner's related ineffective assistance of counsel claim as one of his "remaining allegations" found to be "unpreserved for appellate review, without merit, or both." Id.

For the reasons explained below, we deny the application and dismiss the petition.

## BACKGROUND

### A. Facts Established at the Suppression Hearing

Petitioner had initially entered a plea of not guilty and moved to suppress the line-up identifications made by the victim (Lin) and an eyewitness (a Mr. Hu), and to suppress the statements he made to police after his arrest in which he admitted his criminal conduct. At the hearing on these motions, Detective Richard Gili testified that, following a waiver of his Miranda rights, petitioner furnished a detailed account of his criminal acts.

According to Gili's account of petitioner's statement, on the night in question, petitioner was canvassing a Queens neighborhood in search of a good place to drink with "a Mexican man" (codefendant Grano) whom he had just met outside the Roosevelt Street subway station. Refused entry at one club that "didn't serve Mexicans," the pair ended up at "a Karaoke place" where Grano "knew somebody" and where Susan Lin tended bar. Grano and petitioner passed the evening "getting drunk" and dancing, sometimes with Lin.

Just at closing time, Grano "challenged [petitioner] as to how much of a man he was," petitioner boasted that he "could show [Grano] how much," and then pointed toward Lin while saying, "I want that woman's watch." Gili further testified that:

> [Petitioner] then hit [Lin] with a remote control to the face and dragged her to the bathroom. At that point, in the bathroom, he hit her with his hand, he slapped her. He took her watch. While he was doing this, the Mexican man came in, [sic] came from behind her. He said he pulled her clothes down and then at that point he says he exited. He left. He left the bathroom and the place. And that's all he knows. (Testimony of Det. Gili, Hearing Transcript at 21).

Petitioner also wrote out the substance of what he told Gili.

The defense cross-examination of Gili pursued only Miranda-related issues but did not

challenge Gili's account of the content of petitioner's statements.

On the subject of identifications, Gili testified that during his interview with the victim (Lin), who spoke little English but communicated through the eyewitness (Mr. Hu, who spoke Mandarin), she identified petitioner from a photo array as "the person that hit her with the remote control, punched her in the face, dragged her to the bathroom, took her watch and tried to have sex with her" (T. at 14). In a report dated August 28, 2000, the Judicial Hearing Officer denied the motions to suppress and found Gili's testimony to be "uncontroverted" and "credible," and by Order dated August September 5, 2000, the trial court adopted the JHO's findings and report. None of these rulings is challenged here.

**B.     Petitioner's Plea Allocution**

Petitioner allocuted, in pertinent part, as follows:

| | |
|---|---|
| COURT: | Sir, it has been charged that in the County of Queens . . . on May 28, 1999, that acting in concert with another person, you did forcibly take property, that being personal property from Miss Susan Lin . . . and that you did, in fact, do so acting with another, and that during that period you did threaten the use of a hard blunt object. Sir, do you admit to that forcible taking? |
| PTR: | I did it on my own. I didn't do it with anybody else. I did it on my own. It was just me. |
| COURT: | Okay. You, in fact, do admit that you, in fact, did take property, that being, I believe, a watch. |
| PTR: | Yes. . . . [b]ut I returned the watch. |
| COURT: | That I understand, sir. And, sir, I believe that, in fact, is satisfactory to the Court. People have any questions they wish to ask of this defendant? |
| PROS: | You dragged the complainant into the bathroom, correct? |
| PTR: | Yes. |
| PROS: | And there was another person with you at the time, right? |

| | |
|---|---|
| PTR: | I really don't know because I didn't see it. I went alone with her into the bathroom. |
| PROS. | And eventually the person that you had come into the bar with was in the bathroom with you as well, right? |
| PTR: | No. |
| PROS: | What did you hit her in the face with? |
| PTR: | With my hand, with my open hand. |
| PROS. | And you punched her several times in the face? |
| PTR: | I never punch[sic] her. I only smacked her with my hand open. |
| PROS: | And you also used a hard blunt object? |
| PTR: | She refuse to give me the watch, I smack her twice as I can remember because I was drunk, but I remember that I smack her twice because she refused to giver me the watch, so after that I take the watch and I flee the place. I don't see the gun, I don't see nobody else. |
| PROS: | That's fine, Judge. |
| COURT: | Court accepts the plea because the Court believes defendant is guilty. |

As the plea proceeding was about to conclude, petitioner blurted out that he "would like to say something." The court advised him that he might first wish to speak with his lawyer, which he did. Petitioner then stated, "I would like to thank you, Judge . . . I would like to thank you very much for having provided me with the opportunity of pleading guilty to the robbery only. It's just what I did."

## C. The Motion to Withdraw the Plea

Two weeks after the plea, counsel handed the court petitioner's pro se motion, stating that he had "just read" it and could "see no basis" for it but did not want to "advocate against [his] client." Counsel declined to "adopt" the motion and stated that he "kn[e]w of no legal reason

why sentence should not be imposed," but that he was "now in a position to be an adversary against [his] client." Counsel also disagreed with petitioner's claim that he (counsel) "insisted" that petitioner plead guilty, asserting that "[t]he record will refute that . . . as well as . . . side bar conferences regarding the plea."

The prosecution opposed the motion, the court recessed to review the grand jury minutes, and then petitioner spoke. He told the court, "I was drunk and I steal the watch and I have give[n] it back to her, and you give me twelve years behind bars for stealing a watch and giving [it] back to the lady? Well, if you call that justice . . . I have so much pressure from the side of my lawyer and I would like to go to trial to defend and prove my defense." The court noted that petitioner had never before stated that he had a defense to the charges and that "thus far all [petitioner] presented . . . has been a statement that [he] somehow changed [his] mind." Petitioner replied: "I slapped this woman twice in the face with my hands. I don't [sic] use [a] gun, no knife, or no other instrument that they say I used," and "that's robbery in the *second* degree" (emphasis added).

The court denied petitioner's application and sentenced him in accordance with the negotiated plea to concurrent twelve years terms on each of the three robbery counts.

## DISCUSSION

To form the valid basis for a judgment of conviction, a plea of guilty must be "voluntary," and a "knowing, intelligent act[]." Brady v. United States, 397 U.S. 742, 748 (1970). The act's importance "demands the utmost solicitude of which courts are capable in canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Boykin v. Alabama, 395 U.S. 238, 243-44 (1969).

"[C]entral to the plea and the foundation for entering judgement against the defendant is the defendant's admission in open court that he committed the acts charged in the indictment." Brady, 397 U.S. at 748. Nonetheless, a defendant may "voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37 (1970). This is because a guilty plea is *both* "an admission of past conduct" *and* a defendant's "consent that a judgment of conviction [] be entered without a trial," Brady, 397 U.S. at 748, and, "while most pleas of guilt consist of both a waiver of trial and an express admission of guilt, the latter element is not a constitutional requisite to the imposition of criminal penalty." Alford, 400 U.S. at 37. In such circumstances, the plea is valid if the defendant "intelligently concludes that his interests require entry of a guilty plea," and the "record before the judge contains strong evidence of actual guilt." Id.

We conclude that the Appellate Division did not act contrary to or unreasonably apply these authorities when it rejected petitioner's constitutional claim. To be sure, petitioner's understanding of the state penal code is accurate—compare Penal Law §160.15[3] (a person is guilty of robbery in the first degree when "he or another participant in the crime . . . [u]ses or threatens the immediate use of a dangerous instrument") with Penal Law §160.10[2][a] (a person is guilty of robbery in the second degree when he "[c]auses physical injury to any person who is not a participant in the crime"). Likewise, despite respondent's strained interpretive gymnastics, petitioner's allocution does not contain an express or implied admission that petitioner used a dangerous instrument (i.e., the remote control) in the commission of the crime. Nonetheless, we disagree with petitioner's opportunistic assertion that these are the ingredients of innocence and

conclude, as the Appellate Division correctly recognized, that the claimed defect in the allocution is not fatal to the validity of the plea.

Under Brady and Alford, the Constitution requires only two inquiries: whether petitioner "intelligently conclude[d] that his interests require[d]" the entry of a guilty plea, and whether the record before the trial court contains "strong evidence" of petitioner's "actual guilt" of the crime of robbery in the first degree. Alford, 400 U.S. at 37. We answer both inquiries in the affirmative.

Petitioner does not seriously dispute the first issue. The record here confirms that, like the traditional *Alford* defendant who denies or makes only a qualified admission of his guilt because he rationally concludes that it is in his interest to enter a plea that spares him the death penalty, petitioner made a qualified admission of guilt—to the three robbery counts but not to the rape or sexual assault counts—because he sensibly concluded that it was in his interest to avoid the consequences of a sex crime conviction. When counsel first announced his client's intent to change his plea, it was petitioner who corrected his lawyer's remark and unequivocally declared his wish to plead to only the robbery counts; the court inquired of petitioner directly about the matter; petitioner and his counsel again conferred before the plea was taken; and petitioner made a spontaneous expression of gratitude to the court for allowing him to "plead[] guilty to the robbery only" because it was, in petitioner's own words, "just what [he] did."

On the second inquiry, we find ample evidence of petitioner's "actual guilt" of the crime of robbery in the first degree in the hearing testimony of Detective Gili, which the state court found to be both uncontroverted and credible. On the single element challenged on this petition, whether petitioner used "a dangerous instrument," the record specifically establishes that long

before petitioner's post-plea motion put his use of a remote control at issue (and thus before a motive to tailor testimony on that point could have arisen), Detective Gili testified that petitioner had admitted to him that he struck Lin with a remote control, and that Lin had identified petitioner from a photo array as the person that hit her with a remote control.

Petitioner's related ineffective assistance of counsel claim fails for the same reasons. As it is largely premised on counsel's failure to endorse petitioner's pro se motion to withdraw his plea, the claim would fail both prongs of the constitutional test, see Strickland v. Washington, 466 U.S. 668 (1984), and thus not be a basis for habeas relief. To the extent the claim seeks to fault other aspects of counsel's representation, it is utterly unsupported as a factual matter.[1]

## CONCLUSION

For the foregoing reasons, the application is denied and the petition is dismissed. Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability shall not issue. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith. Coppedge v. United States, 369 U.S. 438 (1962). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 11, 2009

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge

---

[1] The parties agree that petitioner's separate claim relating to the post-supervised-release component of his sentence is now moot due to relief that petitioner has obtained in the state courts.